FRANK LAKE et al., respondents,

*v.*

JOSEPHINE T. WEAVER et al., appellants.

[Argued June 22d, 1909. Decided November 15th, 1909.]

1. When a deed of conveyance duly delivered by the grantor has remained for a long period of years in the possession of the grantee, its acceptance, nothing appearing to the contrary, will be inferred; and a like inference arises where the deed was for the benefit of the grantee.

2. The title to land, if once vested in a grantee by the acceptance of a valid deed of conveyance, cannot, in legal contemplation, be revested by the grantee in the grantor or his heirs save by an appropriate documentary act; in the absence of such an act the fact that the deed was not recorded or that it was lost is ineffectual either to devest the legal estate or to revest it in those who appear as owners of record.

3. Admissions or declarations of the holder of the legal title to land that have not induced any action or inaction in other claimants or worked any change in their status do not constitute an estoppel.

On appeal from the decree of the court of chancery advised by Vice-Chancellor Garrison, who filed the following opinion:

In an opinion filed on the 15th day of May, 1908, I formulated the issues and announced my conclusions in this cause.

This cause has been before the court for a long time, the first testimony therein having been taken at Trenton on the 11th day of December, 1906.

Among the matters offered in evidence at a hearing held January 28th, 1908, was the deposition of one George A. Bourgeois, taken on the 11th of January, 1908. This deposition was taken at the instance of the complainants. Among the objections made on behalf of the defendant to the admission of this deposition was that it appeared that Mr. Bourgeois was, at the time of the communications and transactions alluded to in his testimony, the solicitor and counsel of Mrs. Josephine T. Weaver, and that, by the familiar rule which protects the communications of clients, her communications to him were privileged and protected. The court thereupon considered all of the evidence which had been taken at that hearing upon the matter, and not finding any in which Mrs. Weaver had waived her privilege, ruled that the deposition was not admissible. Therefore at the time the court decided the case there was no testimony, excepting that given by Mrs. Weaver upon the witness-stand, as to the transactions between her and her son Theodore at the time that she received the deed in question, which deed having been lost, the defendants took the proceedings to have it established under the statute which are sought to be enjoined in this suit by this bill.

The complainant, after the filing of my opinion of May 15th, 1908, petitioned the court for a rehearing, which was granted and has now been held. At that rehearing it developed that the testimony taken at Trenton on December 11th, 1906 (overlooked by all of the parties and by the court at the time that the admissibility of the Bourgeois deposition was being discussed), contained many references by Josephine T. Weaver to the matter in hand. It is shown in that testimony that Mrs. Weaver, upon being interrogated by her own counsel as to why she had admitted in the specific performance suit brought against her by the Whites that one-third of the property was owned by the children, answered that it was because of advice given to her by Mr. Bourgeois, and she assumed to recite the language that he used to her in giving her that advice, saying that he told her that if the deed was lost, as she said it was, her rights were all lost—

that she had no rights—that they were lost, and that, acting under that advice, she admitted that the children had a third interest.

The Bourgeois deposition dealing with this matter of the failure to set up the rights of Mrs. Weaver under the deed of her son to her in the specific performance case, states that the reason was that she told him, Bourgeois, that this deed, which she exhibited to him, was given to her by her son for no consideration whatever, that she had given nothing for it; that she held it for the children of her son Theodore, and had no other interest in it, and that, under the circumstances, he advised her that there was no necessity for her to set it up in the specific performance case.

Since the entire case, as dealt with by me heretofore, rested upon the testimony of Mrs. Weaver, and since the testimony of Mr. Bourgeois, an impartial and credible witness, shows that her testimony is false, I propose to reverse my finding of fact.

I now find that Mrs. Weaver received this deed under circumstances which made it optional with her (as I heretofore held in the partition suit, *White* v. *Smith, 72 N. J. Eq. (2 Buch.) 697),* whether she would take it or not, and I find that she did elect, as shown by the Bourgeois testimony, not to take it, and that by her actions and conduct she did, in every way that was possible except by actually drawing a deed from herself to the children and putting that on record, vest the title in the children. In other words, the title descended to the children on the record. If she withheld the deed from record, the record would vest the title in them. She did withhold the deed from record; she stated that; she practically shows that whatever her rights were, she was making a gift to the children, or, at least, not claiming any rights herself, which resulted in a gift to the children, or resulted in the children getting the title, and I now find the very state of mind exhibited by her own conduct which, without the Bourgeois testimony, I failed to find in that suit.

I will advise a decree that the defendant Josephine T. Weaver be enjoined from proceeding to have this deed established of record under the statute, and that Josephine T. Weaver has no interest in the one-third of the proceeds realized in the partition

suit, which therein nominally go to the complainants in this suit, and that the complainants in this suit may apply therein for their rights, upon notice to the defendants.

The foregoing was the oral statement of the court in deciding the case at the conclusion of the rehearing.

Having been notified of the taking of an appeal, I think it proper to add a brief statement for the purpose of making the grounds of my decision more easily understood.

I do not think it necessary to restate the facts, in view of the two previous statements reported in *White* v. *Smith, supra,* and in the unreported case of *Lake* v. *Weaver.* I desire to add, however, the impression which I think is apparent in my previous dealings with this evidence, which I obtained from Mrs. Weaver's manner, and, to some extent, from her own testimony, and that was that she was not willingly asserting any claim under the deed from her son to herself, but was, so to speak, permitting herself to be used to establish a legal position outside of and unconnected with her own volition. Her conduct with respect to the deed itself was in accordance with this attitude. She did not record it, and no longer had it in her possession, and my impression always was that she had voluntarily destroyed it. Even before the admission of the Bourgeois deposition I could not escape the conviction that Mrs. Weaver, from the date of the deed in 1889 to 1905, when the application to establish the lost deed was made, a period of sixteen years, did not intend to take any personal advantage of the deed. But in the absence of any clear legal proof that this conduct was the result of an executed purpose to thereby make a gift to the children of her son (the grantor in the deed), I decided that her legal rights prevailed. And I do not now decide that such legal rights fail because she must be considered a trustee. I am aware of and give full weight to the decisions in our state to the contrary. I do not intend by this decision to abate at all from the rule established in this state that a conveyance upon an expressed consideration with the uses declared in favor of the grantee is protected under the statute of frauds from attack by oral proof on the part of the grantor. This rule I consider to be too well settled to require citation.

If, however, the alleged trust in this case is to receive any con-

sideration, and the decision be not put upon the ground upon which I put it, the complainants could prevail without infringing upon the rule just stated. There is nothing to prevent one who is a trustee under an oral trust unprovable under the statute of frauds from voluntarily executing such a trust, and after such execution the court will not interfere. *15 Am. & Eng. Encycl. L. (2d ed.) 1169, note 5.*

Giving to the Bourgeois deposition the controlling weight to which, by reason of the character of the witness and his absolute impartiality, it is entitled, it establishes that Mrs. Weaver informed him she had no interest in this property, was a dry trustee, and was thereupon advised by him that, under the circumstances, the deed which she exhibited to him was of no consequence or moment.

In the very suit then in hand she asserted the ownership by the children of her son, the grantor in the deed, of the very lands described in the deed and at or about that time the deed finally disappears—destroyed, as I have before stated, I believe, by her.

The proper finding upon this state of facts would be that she had executed the trust. If she recorded the deed and the legal title was vested in her she was a dry trustee. If she desired, then, to execute the trust, which was not enforceable against her because of the absence of a writing, she would have to execute a deed or declaration of trust to the children aforesaid. But her purpose to execute the trust and vest the title in the children would be just as effectually accomplished, without any expense or trouble, by merely destroying the paper evidencing the legal title in herself.

It was an immaterial detail, therefore, excepting only the matter of expense whether she recorded this deed and made one back to the children, or whether she destroyed the deed and thereby just as effectually caused the title to be in the children. The children, by the operation of law, held the title to this property unless the deed from their father to Mrs. Weaver was effective.

Her conduct, therefore, at that time was an effective execution of the trust, and the fact that the same was not enforceable against her is now negligible.

But, as before stated, I think exactly the same finding will result by considering her in the position of a donor whose gift was completely executed, and will not now be undone.

While only her own testimony was usable to discover the facts, I was constrained, unwillingly, as appears by my statement at the time, to find that she might hold this otherwise voluntary deed as a mortgage. I could not even then escape the conviction, that from the time she obtained the deed as aforesaid, and for the sixteen years which followed, her intention had always been to take no advantage under the deed, and to give the benefit of the property to the children of her son. But I had not, up to the time of the admission of the testimony of Bourgeois, any sufficient proof upon which to rest my conviction of what the situation really was. That evidence, in my view, clears up the whole case. It shows that Mrs. Weaver never intended to claim anything under the deed given her by her son; that, therefore, she refrained from recording it; that when every legal and moral necessity called upon her to honestly state the facts and her intention or claim (namely, in the specific performance case of the Whites against her), she not only negatived her own claim by not setting it up, but affirmatively set up that the right, title and interest were in the children of her son. At that time, with full knowledge of the facts, with the necessity for her to declare her intention, with the deed in her possession, and able counsel at her elbow, she disclosed, in my view, her intention and determination, which was to refrain from claiming anything personally beneficial to herself by reason of the deed, and to thereby give to the children of her son the property in question. Immediately thereafter the deed disappeared.

I think it entirely clear that she must be held to have effectually given (in consonance, as I believe, of her original intention never to take) the property in question.

The decree will be along the lines above indicated.

*Mr. Gilbert Collins,* for the appellants (*Messrs. Melosh & Morten,* on the brief).

*Mr. John J. Crandall,* for the respondents.

The opinion of the court was delivered by

GARRISON, J.

In the view that we take of this case it is not necessary to determine whether the deposition of Mr. Bourgeois as to the statements made to him by Mrs. Weaver was properly admitted in evidence or to decide whether she in fact stated to him that her son, Theodore, had made the deed to her to protect his children, and that she was to hold the deed for the children, and had no interest in it excepting to see that Theodore's children got their father's share of the farm. For the purposes of this appeal it may be assumed not only that Mrs. Weaver made all of these statements, but also that they correctly represented her understanding of the transaction and her attitude and intentions with respect thereto from the day the deed was delivered to her down to the day that its loss was discovered. Assuming all of this to be so the salient fact remains that in 1889 Theodore S. Weaver executed and delivered to his mother, Josephine T. Weaver, the deed in question, which remained in her possession until its loss in 1903, during all of which period the legal title (which must have resided somewhere) was in one or the other of the parties to the said deed. If the title remained in Theodore it is now in his heirs; if it passed to Josephine she, notwithstanding the disappearance of the deed, still holds the title subject to such trusts only as are enforceable under the statute of frauds. Wherever, in fine, the legal title was from the time of the delivery of the deed to that of its disappearance there it now is. Hence, in our judgment, to decide where the title was during that period is to decide this case.

The question that is thus fundamental is essentially one of fact and resolves itself into the single inquiry whether the deed that was delivered by Theodore to his mother was accepted by her; or perhaps the question is still narrower, viz., whether after such a lapse of time acceptance of the deed as of the date of its delivery will not be inferred unless some stronger inference points to the opposite conclusion.

That there was a good delivery of the deed is not questioned, nor is it even suggested in proof or in argument that at the

time of its delivery Mrs. Weaver refused to accept it or that she had any conceivable motive for so doing.

On the contrary, her understanding that the deed was delivered to her in the interest and for the protection of her grandchildren afforded the strongest possible motive for accepting it, so strong indeed as both upon reason and principle to assimilate the transaction with those in which acceptance is to be inferred from the beneficial character of the conveyance. If, however, the grantee's understanding of the purposes for which the deed was delivered to her is to be ignored because not legally manifested, then the deed for which no consideration passed was, in such legal point of view, a gift, and would, without doubt, have been so treated if attacked by the creditors of the grantor. From whichever standpoint therefore the transaction be viewed, it was one to which the inference of the acceptance of a benefit is applicable. It has been held that the delivery of a deed to a third person passed title *eo instante* upon the ground that, nothing appearing to the contrary, it is to be inferred that a grantee accepts what is for his benefit. *Jones* v. *Swayze, 42 N. J. Law (13 Vr.) 279.*

*Traurig* v. *Gelb, 70 Atl. Rep. 352,* in which the court of errors and appeals cited *Jones* v. *Swayze* as authority for "the rule that the law will presume that a man accepts what is for his benefit," was a case in which delivery was made to the grantee directly and not to a third person, and it must be that the inference that obtains when the grantee is not present and is not informed will *a fortiori* apply when he is both present and acquainted with the contents of the deed and takes it into his possession. Cases illustrative of this rule are collected in *9 Am. & Eng. Encycl. L. 162;* see, also, *Matheson* v. *Matheson, 117 N. W. Rep. 755.* In addition to, or, if need be, quite independently of, the foregoing consideration, the fact that Mrs. Weaver retained the deed for fourteen years after its delivery to her by her son, raises an inference of her having accepted the deed that can hardly be said to be weakened, and that certainly is not overcome by the fact that she did not give publicity to a family matter by spreading the deed on the public records. The declarations of the grantee that Theodore's share belonged to

his children, while evidential of the purpose for which the deed was made to and held by her, have no bearing upon the question as to where, upon an uncontroverted state of facts, the legal title resided. The inference of acceptance arising from lapse of time and the other circumstances adverted to is so strong and so entirely unrebutted that the only conceivable hypothesis at all consistent with the retention of the title by Theodore during the fourteen years that followed his delivery of the deed is that during all of such period such instrument remained in a sort of escrow so that the legal title did not pass under it until the happening of some event or the performance of some condition. Such hypothesis, however aptly it may account for the conduct of the parties, runs directly counter to the imperative rule that a deed cannot be in escrow with its grantee. The soundness of Chief-Justice Beasley's exposition of this subject in *Ordinary* v. *Thatcher, 41 N. J. Law (12 Vr.) 403,* has never been questioned in this state. The rule everywhere is that the delivery of a deed to its grantee cannot be in escrow, but is, regardless of such purpose, a good delivery of the deed. *11 Eng. & Am. Encycl. L. 333, "Escrow;" 16 Cyc. 561, "Escrows."*

The stability of all titles to land rests at bottom upon this rule.

The conclusion, therefore, seems to us to be irresistible that from 1889 to 1903 the legal title to Theodore's interest in the farm was in the grantee of his deed, viz., Josephine T. Weaver, the appellant. This conclusion must also have been assumed by the learned vice-chancellor before he could consistently regard Mrs. Weaver in the light of a donor of such interest. For when he says that Mrs. Weaver "was making a gift to her children," and was "in the position of a donor whose gift was completely executed," he was in effect assuming her acceptance of the deed without which she would have had nothing to donate and could not have held the position of a donor. Excepting as such acceptance is thus implied we cannot adopt the reasoning by which the conclusion is reached that an executed gift resulted from the destruction by Mrs. Weaver of the deed, chiefly from the consideration that there is no express finding of fact that Mrs. Weaver did destroy the deed or any testimony that would sup-

port such a finding. The other ground of the decision below, viz., that of the voluntary execution of an unenforceable trust seems to involve the same implication as to the acceptance of the deed. For a trust, whether enforceable or unenforceable, must exist in order to be a trust, and, in order to exist, must be supported by the legal estate which in the present case could have become vested in Mrs. Weaver in no other way than by her acceptance of Theodore's deed. Further than this we cannot go with the court below, not only because it was not proved that Mrs. Weaver destroyed the deed with the object of executing a trust, but also because, in our opinion, the acts that she did were entirely ineffectual for such object. The underlying legal estate essential to the conception of a trust is neither annulled or transferred by the loss of the deed that conveyed it or by withholding such deed from record or by both combined; the title to land, if once vested in a grantee, cannot, in legal contemplation, be revested by the grantee in the grantor or his heirs or transferred to strangers save by an appropriate documentary act.

Fifty years ago Chancellor Green, in the case of *Wilson* v. *Hill, 13 N. J. Eq. (2 Beas.) 143,* declared that "the rule of the common law is perfectly well settled that the cancellation of a deed by consent of parties will not devest the grantee or revest in the grantor an estate which has once vested."

How far a court of equity may go in giving effect to the cancellation, destruction or surrender of an unrecorded deed cannot properly or profitably be discussed upon this appeal, where, in the absence of proof of any of these essential acts, nothing but *dicta* could result.

The question was suggested seventy years ago by Chancellor Pennington's statement in *Faulks* v. *Burns, 2 N. J. Eq. (1 Gr. Ch.) 250,* that "the parties to a deed in a case not affecting third persons may, by agreement, cancel it if it be not recorded," and the entire subject, which is one of great interest, is treated in a comprehensive note to the case of *Matheson* v. *Matheson* (already cited), as reported in *18 Lawy. Rep. An. (N. S.) 1167.*

The learned vice-chancellor, in support of the conclusion reached by him, cites *15 Am. & Eng. Encycl. L. 1169, note 5.*

The title in the *Encyclopedia* is "Implied Trusts," and the text annotated is as follows:

"Though under the statute no trust results in favor of the person by whom the purchase-money was paid still, if the grantee voluntarily executes the trust, such execution is binding upon him, and cannot be recalled."

This text predicates the due execution of a resulting trust, and the cases cited in note 5 in support of it are all cases either of resulting trusts involving actual fraud or of attempts to invoke equitable powers in aid of a fraud, hence neither the text nor the cases throw any light upon what will constitute the due execution of an express trust which is the question *sub judice.*

Assuming, therefore, but not deciding, that the voluntary destruction by Mrs. Weaver of the unrecorded deed with the intent thereby to execute the parol trust, might afford a foundation for the decree rendered in the court below, it is none the less true that the fact of such destruction must be put in issue and established like any other essential fact. This was not done inasmuch as there was no such allegation in the bill, no adequate proof produced at the trial, no such issue raised or tried out in the court below, and, finally, no such contention made in this court.

Our conclusion on the whole case is that Josephine T. Weaver in 1903 was lawfully seized of her son's estate and interest in the Weaver farm, and that since that time she has not, by any method known to the law, devested herself of such estate. This leads to a reversal of the decree of the court below upon strictly legal grounds, the case being barren of any equities unless the appellant Josephine T. Weaver by her admissions, in the course of litigation or otherwise, has estopped herself from asserting her legal title.

The vice-chancellor failed to discover such an estoppel, and in this we think he was quite right, for the admissions and declarations of the appellant, while evidential against her, lacked the essential element of an estoppel, viz., they did not induce any action or inaction or change of status in the respondents.

The result reached is that the decree of the court of chancery should be reversed to the end that the complainants' bill be dismissed, and the appellant Josephine T. Weaver suffered to proceed with the remedy provided by statute in the case of a lost deed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, CONGDON—13.