WILLIAM A. KELLY et al., complainants-respondents,

*v.*

BARNET CHINICH et al., defendants-appellants.

[Submitted March 24th, 1919. Decided June 17th, 1919.]

The attorney or agent of the grantor or obligor in a deed or written contract may act as depositary of an escrow if his relation to his principal is such that his acting as an escrow is not antagonistic to his principal's interests, and if the paper was put in his hands for delivery on the performance of a condition not dependent on the volition of his principal.

On appeal from a decree advised by Vice-Chancellor Foster, reported in *90 N. J. Eq. 602,* whose opinion is as follows:

"The bill in this cause is filed to compel the specific performance of a contract for the purchase of real estate in the village of South Orange. It is entirely a fact case, and the question to be determined is whether the parties ever entered into the contract in question.

"It appears that some time prior to October 23d, 1917, complainants, through Stern & Cohn, real estate agents, had offered to sell the premises in question to defendants, and' that defendants visited the property with Mr. Cohn and learned from him that the lands were located in South Orange.

"On October 23d, 1917, the parties and the agents met at the office of Charles F. Herr, counsel for defendants, and had drafts of the contract of sale prepared. When the description of the property was read, one of the defendants raised the question whether there were any building restrictions in force in the village of South Orange that would prevent defendants from building a four-story apartment-house on the lands. They were to pay $9,000 for the land and had told complainants they intended to build thereon an apartment-house that would cost about $90,-

000.    When the question about the building restrictions was raised one, or both, complainants assured defendants that there were no restrictions in the village that would interfere with the height of their building, and it is at this point that the controversy between the parties arises.

"According to complainants' version, defendants were satisfied with the assurances that complainants gave them that there were no restrictions in the village to interfere with the height of their contemplated building; and the suggestion was made that the parties sign the copies of the contract and the check for $300 to cover the first payment called for by the contract, and that the copies of the contract and the check should be left with Mr. Herr for a day or two in order that defendants could call on the proper authority in South Orange and learn that there were no laws or ordinances limiting the height of buildings that could be erected in the village; that this was accordingly done, and a few days later, when Mr. McLaughlin, the other complainant, called at Mr. Herr's office and asked for complainants' copy of the contract and the check, he was informed by Mr. Herr's clerk that the matter was all ended, and was refused the check, but was given one copy of the contract from which the signatures of the defendants had been torn. The other copy of the contract which all the parties had signed was never returned to complainants, and, so far as the record discloses, it is still in the possession of defendants with the signatures of all the parties thereon intact. Complainants in due time demanded the performance of the contract which defendants refused and then this action was brought.

"Defendants' version of what happened when the copies of the contract and the check were signed differs very materially from that of complainants.

"They state that when they raised the question of the building restriction they were unwilling to sign the contract until all doubts on the subject were removed but that they were induced to sign the papers when Judge Herr remarked: 'What's the use of losing time, * * * you can sign and leave your check for the first payment with me and I will hold the papers till you tell me to turn them over.' That Densky, one of the defendants,

still hesitated, and finally he said to Judge Herr: 'All right, you are my lawyer, and if you keep it till we find out, we will do as you say,' and that Judge Herr then said to defendants: 'You are to be the sole judges as to whether the papers will be delivered;' and defendants claim it was upon this assurance that they signed the papers and check.

"While Judge Herr corroborates defendants regarding the above particulars, his memory about many other details of the transactions is very poor, and he pleads that he is a very busy man, as the reason for his failure to recall other details of the transaction. Complainants deny that any such statements were made by defendants or Judge Herr in their hearing.

"Defendants further claim that the papers were not to be delivered until they were satisfied that there would be no trouble in erecting the building. This complainants also deny.

"A day or two later defendants called on Mr. Schwarze, the inspector of buildings for the village of South Orange, and informed him of their proposed building plans and asked if there were any restriction that would interfere with the height of their building. They say Mr. Schwarze told them, 'You can't build such a building in South Orange;' that there was not a four-story building in the village; that even if he were to grant them a permit, the trustees of the village could hold a meeting and stop the construction of the building, and he told them when he learned of the estimated cost that they were taking a big chance.

"Defendants on leaving Schwarze walked through the village as he had suggested and did not see a four-story building. They then returned to Newark and went to Judge Herr's office and told him they were satisfied they would have trouble in South Orange, and asked for the return of the check, which was given them, and their signatures were torn from the copies of the contract. They did not communicate with complainants or tell them the result of their investigations.

"Mr. Schwarze was called as a witness by complainants and he positively contradicts the defendants in every essential particular. He testifies that defendants called on him and informed him of their building project and inquired about restrictions limiting its height; that he took the trouble to look up the

matter and made inquiries of other officials and assured them that there was nothing to prevent them from erecting their contemplated building; that there were no restrictions affecting the height and that they could build it as high as they pleased, provided they conformed with the requirements of the building ordinance relating to the character of the materials used in the building. He denies telling defendants the trustees might or could interfere with or stop their building operations.

"Mr. Schwarze was an exceptionally competent, disinterested witness; he did not know any of the parties; had met defendants only when they called on him in October, 1917, and had never met either of complainants until the day before the hearing. He impressed me as telling the truth and as being wholly uninformed and indifferent about what any other witness had stated at the hearing.

"There is another significant circumstance in connection with what occurred in Judge Herr's office when the papers were signed. Stern & Cohn, the real estate agents, were present, and their version of the matter agrees with complainants'. Stern understood, however, that the papers were not to be delivered until defendants learned that there was no restriction against the height of their contemplated building; while Cohn understood the papers and check were to be delivered as soon as defendants learned there was no regulation of the village that would prevent the erection of a four-story building.

"Cohn was the active man in effecting the sale of the property, and he states that after the check and contracts were signed, complainants took him into one of Judge Herr's rooms and gave him a written agreement to pay the agents a commission of two and one-half per cent. for effecting the sale. Stern thinks this agreement was given them just before the contract was signed, while Cohn is positive it was given afterwards.

"If Cohn's version is correct, it may have been that while he and complainants were in one room and Judge Herr and defendants in another room, some of the remarks it is claimed Judge Herr and defendants made to each other about the papers were actually exchanged, but there is nothing in the proofs to show that such remarks were ever brought to complainants' attention.

"In view of all the circumstances, the improbability of complainants, without consideration, tying up property worth $9,-000 for months under what, according to defendants' statements, amounted to a mere option to purchase or not as defendants saw fit, and in view of the fact that complainants must have considered the contract closed when they gave the agents a written agreement to pay them a commission for having effected the sale, and particularly in view of defendants' deliberate false testimony about the result of their interview with the inspector of buildings, coupled with the fact that defendants have made no effort to show that there is any law or ordinance that would prevent or interfere with the building they claim they intended to erect, I have reached the conclusion that complainants' version of the matter is the correct and truthful one, and that defendants have merely used the question of a building restriction as a subterfuge, to escape the performance of the contract, possibly because they could not obtain the building loan they desired, or, possibly, because they realized, as Mr. Schwarze told them, they were taking a big chance in erecting such an expensive apartment-house in South Orange. Whatever their reason, I am satisfied defendants have not told the truth and have not acted in good faith towards complainants; they permitted complainants to become liable for the payment of the agents' commission; they held complainants' property for several days under contract, after they had decided not to buy it, and never informed complainants that they had decided not to purchase the property. If they held it under any such conditions as they claim, they do not explain why they did not have this condition written in the contract, together with the other conditions written therein.

"The proofs convince me that the defendants have deliberately testified falsely about the transaction, and that complainants have told nothing but the truth, and a decree will be advised in accordance with the prayer of the bill."

*Mr. Philip J. Schotland,* for the appellants.

*Mr. Charles M. Myers* and *Mr. Milton M. Unger,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

The decree in this cause was heretofore ordered affirmed as on a default of appellants, on the authority of *Hazard* v. *Phœnix Woodworking Co., 78 N. J. Eq. 568,* for the reason that the cause having been marked to be submitted on briefs, the brief sent in for appellants was not signed by counsel. See *90 N. J. Eq. 602.* Thereupon appellants employed counsel, who appeared and prayed a rehearing of the appeal on the principal ground that the failure to present a brief signed by counsel was due to ignorance of the rule enunciated in the *Hazard Case* above cited. It was not denied that the solicitors who signed the brief were aware that they would not be heard orally; but it was urged that they believed a written brief signed by an attorney-at-law as solicitor would be accepted. Whether with this explanation we should have reheard the appeal if the respondents had objected need not be considered, for as their counsel present on the application for reargument declined to object to a reconsideration on the merits, and a brief, properly signed by counsel, was then duly submitted, we have concluded to take up the appeal on the merits.

Considering it in this aspect, our examination of the evidence leads to the conclusion that the vice-chancellor correctly decided the questions of fact in the case, and we accordingly accept his findings in that regard.

On this theory, Mr. Herr, who, as attorney of the defendants, purchasers, had drawn the contract of sale in duplicate, and had attended to its execution by all the parties, was made their depositary until such time as defendants had satisfied themselves by personal inquiry that there were no building restrictions limiting the height of buildings intended to be placed on the property, and if the defendants found there were none, the complainants' duplicate of the contract, and the check of the defendants for the initial payment, were to be delivered to complainants and not otherwise. The vice-chancellor correctly found as facts that no such restrictions existed and that the purchasers so ascertained. In consequence, the condition was performed; and if

Mr. Herr was the lawful depositary of an escrow, complainants were entitled to the contract for the purpose of enforcing it.

There has been some contrariety in the decisions as to whether the agent or attorney of a party can be a depositary for purposes of escrow; the older cases holding that, according as he is the agent of one party or the other, there is an absolute delivery, or none at all. *16 Cyc. 574; 11 Encycl. L. (2d ed.) 333, tit. "Escrow;" Ordinary* v. *Thatcher, 41 N. J. Law 403; Lake* v. *Weaver, 76 N. J. Eq. 280, 288.* The matter has been set at rest in this state, however, as to an attorney for the grantee or party asking the delivery of the contract or deed, by the recent case of *Bowman* v. *Brown, 87 N. J. Eq. 47;* decided by Vice-Chancellor Stevens, whose opinion was adopted by this court in affirming the decree. *Ibid. 363.* The rule there approved and taken from *10 R. C. L. 631,* is, that "if the agent's or attorney's relation to his principal is such that his acting as custodian of the deed or paper is not antagonistic to his principal's interests and the paper was put in his hands not as a delivery, but as an escrow, such general agent or attorney of the grantee, payee or obligee of an instrument is not incapacitated from acting as depositary of the instrument, but becomes the agent of both parties for the purposes of the escrow."

There seems to be no reason founded, in logic or good sense, why a similar agent of a grantor or obligor may not similarly act as depositary; and so the cases seem to hold (*16 Cyc. 574,* and citations); and it is settled as a fact in this case that the parties agreed that he should act in such capacity. There was nothing in his employment by defendants that made the escrow by its terms antagonistic to their interests.

It follows that complainants were entitled to the delivery of the contract and check. They brought their bill for specific performance upon the contract as an instrument in fact delivered to them, which may have been premature. But this point was not made before the vice-chancellor, apparently, nor in this court. It is argued in the brief that "there was no delivery," but the reasoning is simply that there could be no delivery until defendants authorized it; and this has been disposed of above. The technically correct course was to sue to compel delivery of the

instrument in the first place. *16 Cyc. 585; Fred* v. *Fred* (*Vice-Chancellor Emery*), *50 Atl. Rep. 776.* But as no point has been made of this, and under present equity practice in this state the two rights of action may be joined, and the whole case has been already tried out and there is no question that if the complainants were entitled to the delivery of the paper they were entitled to enforce it, the record will be remitted to the court of chancery with directions that upon a suitable amendment of the bill, bringing in Mr. Herr as a party, if necessary, the decree be modified to provide both for delivery and specific performance of the contract.

Neither party is entitled to costs in this court.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—13.

*For reversal*—BERGEN—1.