SOUTH JERSEY FURNITURE CORPORATION et al., complainants,

*v.*

WILLIAM T. DORSEY et al., defendants.

[Decided January 22d, 1924.]

1. A bill for specific performance may be maintained by the assignee of the vendee in a contract for sale of land.

2. Where the vendor's wife did not execute a contract of sale, but by her acts consented thereto, a decree of specific performance may provide for allowance in the purchase price of the value of her inchoate dower.

3. A contract for sale of land signed by one of the parties ceases to be unilateral when the other party files a bill for specific performance thereof.

4. Where a mortgage was made, executed and recorded before visible possession of the lands was taken by the vendee, who took possession under the agreement to purchase, such mortgage is a lien upon the premises: but where other liens were attempted to be imposed thereon after such visible possession was taken, and as such are not without notice of the vendee's claim of right, they are not prior liens.

On bill for specific performance    On final hearing.

*Mr. William Elmer Brown, Jr.,* and *Messrs. Cole & Cole,* for the complainants.

*Mr. Joseph B. Perskie,* for the defendants William T. Dorsey and wife.

*Messrs. Endicott & Endicott,* for the defendant National Security Bank, of Philadelphia.

*Messrs. Moore & Butler,* for the defendant Equitable Trust Company.

*Mr. Patrick H. Harding,* for the defendant James Carney.

*95 N. J. Eq.*    South Jersey Furniture Corp. *v.* Dorsey.

INGERSOLL, V. C.

This is on bill for specific performance with a prayer "that complainants be permitted and allowed to pay into this court such moneys as may be found and determined to be due under the terms of said agreement, so that said moneys may be paid and distributed to and among said defendants having liens as aforesaid under the direction and order of this court."

On the 16th day of January, 1922, William T. Dorsey, the owner of a lot of land in Ocean City, entered into an agreement purporting to be with William Thompson, wherein he agreed to sell the said lot of land to the party of the second part for the sum of $12,000, payable "$500 this day on account, receipt of which is hereby acknowledged; the party of the second part to place a first mortgage of $5,000 or more if possible, $1,500 cash at the time of settlement; the difference between the total of cash invested [$2,000] and the first mortgage to be a second installment mortgage for five years. One-fifth of same to be paid on said mortgage each year commencing from the date of the mortgage." * * * "Possession to be given party of the second part at any time after the signing of the agreement; * * * settlement to be made on or before the 16th day of March, 1922, or as soon thereafter as satisfactory title policy could be secured from the Ocean City Title and Trust Company."

The agreement was signed by William T. Dorsey and by Ralph L. Chester as attorney for William Thompson.

In the agreement Blanche L. Dorsey, the wife of William T. Dorsey, was named as one of the parties of the first part, but it was not executed by her.

William Thompson was what is usually known as a straw man. He had no knowledge of this transaction at the time, nor did he gain knowledge thereof for a long time thereafter. He made no formal assignments of his rights thereunder until the day of the hearing. Chester had been representing Thompson, and had been on occasions using his name for purchases and sales, and had had a power of attorney from Thompson for some time prior thereto.

The purchase was actually made by Ralph L. Chester, Edward M. Sutton and Donald M. Patterson, partners, who were then, or intended soon thereafter to be, trading as South Jersey Furniture Corporation. Later they organized a corporation of the same name, to which all the right, title and interest of Chester, Sutton and Patterson in the business was transferred.

Possession was taken almost immediately after the signing of the agreement. The title company was apparently not prepared on March 16th, 1922, to issue its policy, and on or about May 27th, 1922, the parties met at the title company's office for settlement.

It then developed that on January 28th, 1922, Dorsey and his wife had executed a mortgage upon the lands and premises in question to the Equitable Trust Company, of Atlantic City, to secure the payment of the sum of $1,500 at the expiration of three months from the date thereof, with interest thereon at the rate of six per cent. per annum, payable semi-annually. Said mortgage had on the 2d day of February, 1922, been recorded in the clerk's office of Cape May county, in book No. 183, page 48.

That on March 7th, 1922, Dorsey and his wife had executed a mortgage on the premises to one James Carney, to secure the payment of the sum of $5,000 within two years from the date thereof, with interest. Said mortgage had been recorded in the clerk's office aforesaid on March 11th, 1922, in Mortgage Book No. 181, page 358. Carney was present at the title company and stated that there was due on the principal of said mortgage only the sum of $2,000.

That on March 23d, 1922, Dorsey and his wife had executed a mortgage on the premises to the National Security Bank of Philadelphia, to secure the payment of the sum of $5,000 within five years from the date thereof, with interest. Said mortgage had been duly recorded in the clerk's office aforesaid on March 30th, 1922.

It then appeared by the title company's figures that to make the settlement it would be necessary for Dorsey to advance funds, which he was unprepared to do, but stated

that he would endeavor to arrange matters and that settlement could be set for a later day. No settlement or conveyance has since been made.

On August 4th, 1922, Dorsey executed an obligation under seal to the said National Security Bank of Philadelphia, conditioned for the payment of the sum of $7,975 on August 5th, 1922. Default was made and judgment entered in the Cape May circuit court.

On June 29th, 1922, George A. Bossler, Charles Colcord and Charles Youngkin, trading as Bossler & Company, filed an attachment against Dorsey for $672.20 in the New Jersey supreme court.

The consideration of the mortgage to the Equitable Trust Company was the sum of $1,500, money loaned and advanced by the company to said Dorsey.

The consideration for the Carney mortgage and for the National Security Bank mortgage was, in each instance, in whole or in part, for past due indebtedness of Dorsey to the mortgagees. The judgment obtained by the National Security Bank included the mortgage debt, which mortgage had not been foreclosed.

The defendant Dorsey insists that by reason of the fact that settlement was not made on the 16th day of March, 1922, the date mentioned in the agreement, he was compelled to execute the mortgages to Carney and the National Security Bank of Philadelphia, in order that certain properties in Pennsylvania could be released from liens upon them, in order that he might make sale thereof.

It will be noted that the mortgage to Carney was executed five days prior to the date fixed for settlement; the mortgage to the National Security Bank of Philadelphia was executed on March 23d, 1922, one week after said date, and that the contract called for settlement on March 16th, 1922, or as soon thereafter as policy could be secured from the Ocean City Title Company.

Time was not the essence of this contract, and no unreasonable delay has been shown on the part of the vendee.

The complainant is the assignee of Thompson equitably

prior to the day of hearing, and by duly executed assignment delivered at that time. A bill for specific performance may be maintained by the assignee of the vendee in a contract for the sale of land. *Bateman* v. *Riley, 72 N. J. Eq. 316;* citing *Pom. Spec. Perf.* ¶ *487.*

It is insisted that the contract is unenforceable because Mrs. Dorsey did not execute the contract, and now refuses to execute a deed in conformity with the contract, and that such refusal is because of connivance of the husband.

There is no merit in this contention. At the time of the proposed and attempted settlement at the title company's office, Dorsey presented a deed executed by himself and his wife to the complainants for the premises in question.

In a suit to specifically enforce a contract to convey land, a deed, properly executed and acknowledged by the vendor and his wife, is evidence of her willingness to relinquish her dower. *Krah* v. *Wassmer, 75 N. J. Eq. 109.* In this case no decree was made against the wife because she had not been made a party. *Hulmes* v. *Thorpe, 5 N. J. Eq. 415,* was cited, where the chancellor said: "It may be that the wife's acknowledgment of the deed in this case should be considered as equivalent to her express consent to execute it, and that on this ground the court would be justified in making a decree that Thorpe deliver a deed executed by him and his wife. But it would be safer for the court to decree the delivery of the deed already executed by her, and, perhaps, it would be safer for the complainant."

*Krah* v. *Wassmer, supra,* is followed and cited with approval in *Luczac* v. *Mariove et ux., 92 N. J. Eq. 277,* and affirmed by *per curiam* opinion, *93 N. J. Eq. 501.*

Objection is also made to the enforcement of the contract, upon the ground that Chester had no authority from Thompson to execute it, and that it was therefore unilateral and unenforceable.

In *Krah* v. *Wassmer, supra,* Vice-Chancellor Howell uses the following language· "The defendants claim that the receipt above set out is not a contract, or, at least, if it is a contract, it belongs to that class which is known as uni-

lateral contracts and is not specifically enforceable in equity. The law in relation to contracts of this class has received a great deal of judicial attention in this state. In *Cramer* v. *Mooney, 59 N. J. Eq. 164,* it was held that a contract for sale of lands, though signed only by the vendor, would not be held to be unilateral in a case where the vendee had paid nine-tenths of the purchase-money and had tendered the balance thereof and had entered into possession of the lands." Vice-Chancellor Grey says: "The defendant has not only paid to the vendor complainant the greater part of the purchase-money, but has actually entered into possession of the premises and tendered the balance of the agreed price and demanded a deed and the clearing of the title, and the complainant has accepted him as a purchaser and tendered him a deed, and now files his bill to enforce payment. These acts of part performance are sufficient to establish a contract between the complainant and defendant which would be enforced in equity even if entirely by parol." Even if the case stood upon this so-called unilateral contract it ceased to be unilateral the very moment the vendee filed his bill for the specific performance of the contract. *Richards* v. *Green, 23 N. J. Eq. 536.* In that case Chief-Justice Beasley, in the opinion in the court of errors and appeals, says: "But it will be observed that when such contracts come to be enforced in equity they cease to be unilateral, for upon filing the bill the party who was before unbound puts himself under all the obligations of the contract. By his own act he makes the contract mutual and the other party is enabled to enforce it. The consequence is that in every case that I can find where specific performance has been ordered a mutual remedy existed upon it at the time of the rendering of the decree. I must therefore hold that this objection is untenable."

Objection is also made that no time is fixed for the maturity of the first mortgage. Under such circumstances as here exist, a court of equity will, if necessary, presume it to have been the intention of the parties that the mortgage should be made payable on demand. *Green* v. *Richards, 23*

*N. J. Eq. 32; Luczac* v. *Mariove, supra; Patterson* v. *Loiseaux Lumber Co., 92 N. J. Eq. 569.*

The result is that, in so far as Dorsey and his wife are concerned, a decree should be entered directing the husband to deliver to complainants a deed for the premises, subject to the incohate right of dower of the wife, and payment into court of a sufficient amount to indemnify complainants against any claim of dower, or complainants may retain out of the purchase price the value of the dower right.

There remains, therefore, the question of the rights of the remaining defendants.

The mortgage of the Equitable Trust Company, dated January 28th, 1922, and recorded in the clerk's .office of Cape May county, in book No. 183, page 48, was for a valuable consideration and before visible possession was taken by the complainants, and is therefore a lien upon the premises.

The rights of all other defendants accrued after active occupancy of the premises, and as such are not without notice of vendee's rights or claim of right. *Patterson* v. *Loiseaux Lumber Co., supra.*

The rules governing this statement are set out by the court of errors and appeals in *Wood* v. *Price, 79 N. J. Eq. 620:*

"4. Possession of real estate which is actual, open and visible occupation, inconsistent with the title of the apparent owner by the record and not equivocal, occasional, or for a temporary or special purpose, is constructive notice to all the world of the rights of the party in possession.

"5. This rule also includes those equities of one who occupies as tenant, that are connected with the tenancy, as well as interest under collateral agreements, as a contract to convey the land, or to renew the lease.

"6. The possession of premises by a tenant is constructive notice, not only of such tenant's rights and equities, but as well notice of those of the landlord."

A reference will be made to a master to determine the amount due from complainants to defendant Dorsey, and also to determine the amounts due to the respective defendants.