The complainants filed their bill for the specific performance of an alleged contract between them and the defendant. Service was made but no answer filed and the matter proceeded, with the result that a final decree was made in this court, wherein it was decreed that the said agreement be in all things specifically performed on a day therein set, at the office of John B. Slack, Esquire, one of the masters of this court, and that the defendant pay to the complainant the said sum of $8,500, with interest thereon from September 1st, 1924, to assume the payment of a certain mortgage of $10,000 therein mentioned, and in the event the said defendant should fail or neglect to pay the said sum and to assume said mortgage, to make adjustments, pay counsel fees and taxed costs, said amounts should be imposed as a lien upon the lands and premises described, to the end that they should be sold to satisfy said lien; that in case a deficiency should arise upon said sale, that the defendant be ordered by the *Page 662 
court to pay such deficiency. The said premises were sold and the deficiency amounted to the sum of $4,164.45 as of the 16th day of December, 1925.
Nothing further was apparently done in this matter until on or about March 1st, 1929, at which time a petition was filed praying for an order directing payment of said deficiency. This was followed on March 19th, 1929, by a petition filed by the defendant, praying that he have leave to file a bill of review for the purpose of obtaining a review and a reversal of said decree.
My conclusions were thereafter filed, refusing to grant such petition, but without prejudice to the right of petitioner to file a petition to open the decree and to permit him to answer. I stated then this petition should be accompanied with specific affidavits setting forth in detail all evidence on which petitioner might rely. At the return of the order to show cause, counter-affidavits could be read and an early final disposition of this matter had.
A petition was filed. The affidavit accompanying it alleges that he made no defense to said bill of complaint "because one of the complainants, Thomas B. Wootton, the person with whom I made the agreement of sale, advised me not to make any defense or to take any proceedings in said cause because the complainants were going to dismiss the proceedings begun thereunder and not proceed further against this defendant, and it was not until the 3d day of March, 1929, that I learned of the further proceedings against me, and the decree as entered is not in accordance with the relief prayed in the bill of complaint filed herein and is contrary to law, and had it not been for the false and fraudulent representations of the said Thomas B. Wootton that no further proceedings would be taken against me in said cause, I would have filed a defense to said bill of complaint or have filed an appeal from the findings of said final decree within the time permitted by law for so doing, and it is true that I pray that an order be made by this court vacating the said decree for the following reasons: That the contract which the bill seeks to have specifically performed is incomplete, *Page 663 
indefinite, and such a contract that the chancery court has repeatedly refused to compel specific performance thereof; there is an error in law apparent on the face of the decree in that the decree is not in conformity to the prayer contained in the bill of specific performance, in that the decree orders me to do certain things I did not agree to do; in that the decree orders me to do and perform impossible things; in that the decree orders me to assume a certain mortgage on the premises which did not exist, and that the decree orders me to pay eight thousand ($8,000) dollars on a certain date, when as a matter of fact I agreed to give a note, and the prayer for relief contained in the bill prays that I be required to give a note in the sum of eight thousand ($8,000) dollars, whereas the said decree is erroneous in law upon its face in that it orders me to pay the sum of eight thousand ($8,000) dollars; that I did not answer the bill of complaint or protect my interest because of the representations of the complainant that the proceedings would be abandoned as aforesaid, and that the decree should be vacated because the said decree has been made unjust against the right and interest of a defendant that has not been heard."
Upon the argument great stress was made that the defendant was ordered to pay to the complainant the sum of $8,500, with interest; that the written agreement was not complete in its terms and was too indefinite for a decree of specific performance to be made thereon, in that the said agreement stated that the defendant was to make a note for $8,000 and to make a mortgage for $10,000, but no time was set or agreed upon for the maturity of said note or mortgage. The sum of $8,500 was made up of the sum of $8,000 above referred to and the sum of $500 originally paid by check; the payment of which had been stopped.
In so far as the note is concerned, section 7 of theNegotiable Instrument Law (3 Comp. Stat. p. 3735) provides that: "An instrument is payable on demand in which no time or payment is expressed."
In so far as the mortgage is concerned, a court of equity will, if necessary, presume it to have been the intention of the *Page 664 
parties that the mortgage should be made payable on demand.South Jersey Furniture Co. v. Dorsey, 95 N.J. Eq. 530.
In Luczak v. Mariove, 92 N.J. Eq. 377 (at p. 380), it was said: "Where necessary, in the absence of definite terms in the contract, a court of equity will presume it to have been the intention of the parties that the mortgage should be made payable on demand." Green v. Richards, 23 N.J. Eq. 32.
The decree in Luczak v. Mariove, supra, was affirmed for the reason stated in the opinion by Vice-Chancellor Foster.93 N.J. Eq. 501.
 Green v. Richards, supra, was decided at the February term, 1872, and has been continuously cited and approved.
This disposes of the defenses which the defendant desires to offer, if he is given the opportunity so to do by having the decree opened.
An application to open a decree will not be granted (even where the excuse for the defendant's default is sufficient) if such defendant fails to show by affidavit detailed facts evincing that he has a bona fide defense. O'Neill v. Linowitz, 92 N.J. Eq. 179.
The motion to open the decree must be overruled.