This suit grows out of an attempt by the complainant to recapture a lease and an option to purchase a store and premises owned by her at 1801 Atlantic Avenue, Atlantic City, New Jersey. The option is a component of the lease instrument, executed by the complainant in favor of the defendant July 14th, 1944. Before its execution, a printed covenant prohibiting any assignment or subletting was deleted and a provision granting the lessee an option to purchase the premises demised at any time on or before August 1st, 1946, for $20,000 was added. The term of the lease was five years, with the privilege of an additional five years.
November 1st, 1945, defendant sublet the premises for the full term of the original lease (including the right of renewal for the additional five years) to Gem Liquor Store, a corporation owned or controlled by one Nabet. Sometime later, Nabet sold his liquor business and transferred the stock of the corporation to one Charles Merlin.
March 28th, 1946, the defendant contracted with Mr. Merlin to sell and assign her lease and option to him for $5,000, to be paid, $1,000 down, and $4,000 on or before June 15th, 1946. The initial payment was made by Merlin, the form of assignment printed with the lease was completed by inserting the name of the assignee, Gem Liquor Store, and it was executed by Miss Nedelman. Then, at the request of Merlin and with the consent of Miss Nedelman, the words "Gem *Page 25 
Liquor Store" were erased and the name "Charles Merlin" was substituted. It then read:
"IN consideration of the sum of One Dollar other good and valuable consideration in hand paid the Lessor hereby assigns all rights, title and interest in the within lease to CHARLES MERLIN."
As so completed, the assignment and lease-option agreement were entrusted, as an escrow, to Philip Monheit, Esquire, the defendant's attorney.
In May, 1946, Merlin contacted the complainant, told her of his agreement with the defendant, and offered to sell her his bargain. Complainant, at that time, wished to regain control of the lease and to retain ownership of her property. She therefore decided to buy in the option and the lease. It now appears that Merlin had then just sold his liquor business, had transferred the stock of his corporation to the purchaser, and was no longer interested in purchasing the building. He was interested, however, in saving the money he had paid to the defendant.
May 17th, 1946, complainant paid Merlin $1,000 and took from him an assignment of all his right, title and interest in and to his agreement with the defendant. May 28th, 1946, complainant's attorney wrote Mr. Monheit advising him of complainant's purchase, tendering a certified check for $4,000, and requesting settlement. It was arranged by the attorneys that the check and the assignment be exchanged by messenger. The items were delivered. When the assignment was inspected by complainant's attorney he noticed that it purported to transfer a "lease" and not "a lease and an option to purchase;" that it assigned the rights and interest of the "lessor," not of the "lessee," and, that the assignee named was Merlin, not the complainant. He called these matters to the attention of Mr. Monheit. Mr. Monheit conceded that it had been the intention of the parties and of their attorneys to assign the rights and interest of Miss Nedelman, and to transfer both the lease and the option to Merlin. He offered to advise Miss Nedelman to correct the alleged error, to supply the alleged omission, and to execute an assignment directly to the complainant, provided that assignment contained a stipulation it was made subject to any interest or *Page 26 
right of the subtenant. Complainant's attorney rejected this offer. Mr. Monheit then insisted that the complainant accept the assignment as it had been executed and escrowed. Complainant refused, taking the position that the escrowed assignment was erroneous and incomplete and that she was entitled to an unrestricted assignment running to her. Mr. Monheit then returned the certified check and the complainant instituted this suit.
Defendant filed an answer and a counter-claim. She charged that Merlin and the complainant had defaulted in their attempt to purchase her interest in the lease and option and that, on June 18th, 1946, she had duly exercised her option to purchase complainant's premises by causing a written notice of her intention so to do to be delivered to the complainant with a letter of the title company named in the lease-option agreement, designating June 25th, 1946, at 10 A.M., Eastern Daylight Saving Time, as the time and its offices as the place for settlement to be made; that at that time and place the defendant presented herself, prepared to make settlement with the complainant, and that the complainant did not appear. The defendant declares that she is ready, anxious and able to perform the option agreement. The remedy she invokes is specific performance of complainant's contract to sell and convey.
The option provision in the original lease instrument provided that "the lessee or her assigns," should have the option, at any time on or before August 1st, 1946, to purchase complainant's property for $20,000. It stipulated that settlement was to be made at the South Jersey Title and Finance Company, in Atlantic City, "within sixty days after notice by the lessee to the Seller that she has elected to exercise the option to purchase the above demised premises. Possession to be delivered at the date of settlement."
The prayer of the complainant's bill is that the defendant be decreed to assign all her interest in the lease and the option to purchase to the complainant. The complainant must be denied such relief. In the first place, although the complainant did allege in her bill that the assignment contained an error, was incomplete, and should have been made directly *Page 27 
to her, she sought no reformation of the writing. If I were to hold such a specific prayer to have been unnecessary, it would still be impossible for me to advise a reformation, as Merlin, a party to the contract and the escrow, is not before the court.Brezinski v. Breves, 109 N.J. Eq. 206; 156 Atl. Rep. 429.
Nor, is Monheit, the depositary of the escrow, a party to this suit.
Merlin and his corporation, Gem Liquor Store, were parties vitally interested in the lease and any assignment thereof; the corporation was in actual possession of the demised premises and assured of almost ten years of continued occupancy under its lease with the defendant; Merlin had sold his business and transferred control of the corporation to the purchaser with, in all probability, the long term lease a material element of the consideration. Complainant's failure to seek a reformation of the assignment and her failure to have made Merlin a party to this cause are technical objections, but there are other and very practical deficiencies in complainant's case that require a dismissal of her bill.
Complainant's construction of the contract to assign and of the assignment is, I am satisfied, erroneous. She says that the word "lessor" in the assignment should have been "lessee." On first impression this might appear to be correct, as Miss Nedelman was the lessee in the original lease. But, there was a sub-lease and, in that, Miss Nedelman was the "lessor" and Merlin's alter ego, Gem Liquor Store, was the "lessee." Merlin was here purchasing the rights of the "lessor" to his corporation. That this was the thought of both Merlin and Miss Nedelman is clearly indicated by their conduct. The contract was in two parts — that part which Merlin signed, and which was prepared, executed and accepted by Miss Nedelman in the office of her attorney, began with these significant words: "I, CHARLES MERLIN herewith agree to take an assignment of the lease and option to purchase as provided in that certain lease dated the 14th day of July, 1944," c. (Italics supplied.) Merlin accepted the assignment, now questioned by the complainant.
The words used in the assignment, "in the within lease," were printed as a part of the form, and referred to the principal *Page 28 
instrument, preceding that assignment, which was termed, in printing, "Standard Lease." The option to purchase was an integral part of that instrument, and that option was assigned with the lease by reference to the title the composite instrument bore.
In Miss Nedelman's answer, filed herein, she admitted that when the contract to assign was made it was the intention of the parties to effect a sale and an assignment of all her interest in both the option and the lease. She went even further; she asserted that the assignment actually "included the option therein contained." The attorneys for both parties testified that it was the intent and purpose of all to sell and assign both the lease and the option. In view of the interpretive acts of the parties, the testimony of their attorneys, and the words of the executed assignment, construed in the light of the situation of the parties, there can be no doubt but that they intended and effected an assignment to Merlin of the entire interest of Miss Nedelman in both the lease and the option.
Ordinarily equity will entertain a suit for specific performance of a contract prosecuted by an assignee. Bateman v.Riley, 72 N.J. Eq. 316; 73 Atl. Rep. 1006; South JerseyFurniture Corp. v. Dorsey, 95 N.J. Eq. 530; 123 Atl. Rep. 543;
affirmed, 99 N.J. Eq. 433; 132 Atl. Rep. 923. However, in the instant case the parties agreed upon an escrow. The original lease and option and the assignment thereof to Merlin constituted the escrow instrument. Mr. Monheit, the depositary, evidenced his trusteeship by a letter to Merlin. The letter read: "There has been placed in my hands as escrowee a certain lease dated the 14th day of July, 1944 between FLORENCE BERNSTEIN of the City of Atlantic City, State of New Jersey, and SYLVIA NEDELMAN of the same city, which lease is to be delivered to you by me on or before the 15th day of June, 1946 upon the payment of the sum of four thousand dollars ($4,000.00). This letter is subject to the terms and conditions provided in the agreement, executed by you of even date herewith." The "agreement" referred to obligated Merlin to take an assignment of both the lease and the option to purchase and to pay to Miss Nedelman *Page 29 
$5,000, $1,000 down and the balance of $4,000 on or before June 15th, 1946. The concluding words of that agreement were: "In the event that I do not pay the four thousand dollars ($4,000.00) on or before the 15th day of June, the said one thousand dollars ($1,000.00) shall be forfeited, time being the essence of this agreement."
"The law is that a day fixed in a contract for closing title, without more, is merely formal; but if it is stipulated that time is of the essence, or the circumstances are persuasive that that is the case, prompt performance is essential." The OrangeSociety of the New Jerusalem v. Konski (Court of Chancery),94 N.J. Eq. 632, 635; 121 Atl. Rep. 448; affirmed, 95 N.J. Eq. 254; 122 Atl. Rep. 753. See, also, Doctorman v. Schroeder,92 N.J. Eq. 676; 114 Atl. Rep. 810.
Now, by the very nature of an escrow, the contract should be so nearly completed that it remains only for the grantee, obligee or another person to perform the required condition or for the event to happen, to have the instrument take effect according to its import. 19 Am. Jur., Escrow, § 9.
Many definitions of "escrow" may be found in the text books and the reported decisions. In our early case of Adm'rs of White v.Williams, 3 N.J. Eq. 376, Chancellor Vroom defined an escrow such as is claimed in this cause: "Generally speaking, when a deed is delivered by the grantor to a stranger, to be delivered to the grantee on the performance of some condition, it is considered an escrow." The Chancellor added: "The grantor has done all that was needful for him, to give complete effect to the instrument; he cannot by any subsequent act or omission or refusal of his, prevent his own deed from being operative."
Complainant calls attention to a rule, supported without qualification by many of the earlier authorities, that if the depositary of the instrument is the general agent or attorney of the person to be benefitted by it there is no escrow. The reason assigned for this rule was that "a delivery to the agent of a person was deemed to be a delivery to the person himself, which is contrary to the very nature of an escrow." 10 R.C.L. 631;Ordinary v. Thatcher, 41 N.J. Law 403; Lake v. Weaver,76 N.J. Eq. 280, 288; 73 Atl. Rep. 62. *Page 30 
Complainant contends that, in the instant case, the fact that Mr. Monheit was the attorney for Miss Nedelman in the negotiations looking to the purchase of the lease and option by Merlin and in the drafting and execution of the papers constituting their contract, the attempted escrow was vitiated when he became the depositary.
It is true that in Admr's of White v. Williams, supra, Chancellor Vroom indicated that the depositary should be a "stranger," but the word "stranger" "as used in the definitions of escrow, means a stranger to the instrument, not a party to it, or a person so free from any personal or legal identity with the parties to the instrument as to leave him free to discharge his duty as a depositary to both parties without involving a breach of duty to either." 19 Am. Jur., Escrow, § 14. And the rule which has been generally adopted by the courts of this country is: "if the agent's or attorney's relation to his principal is such that his acting as custodian of the deed or paper is not antagonistic to his principal's interests, and the paper was put in his hands not as a delivery but as an escrow, such general agent or attorney of the grantee, obligee, or payee of an instrument is not incapacitated from acting as depositary of the instrument, but becomes the agent of both parties for the purpose of the escrow." 19 Am. Jur., Escrow, § 15.
The rule last quoted was approved and adopted by this court inBowman v. Brown, 87 N.J. Eq. 47; 99 Atl. Rep. 839; affirmed,87 N.J. Eq. 363; 100 Atl. Rep. 1070, and by our Court of Errors and Appeals in Kelly v. Chinich, 91 N.J. Eq. 97, 103;108 Atl. Rep. 372. In the recent case of Mantel v. Landau, 134 N.J. Eq. 194; 34 Atl. Rep. 2d 638; affirmed, 135 N.J. Eq. 456;39 Atl. Rep. 2d 88, Vice-Chancellor Bigelow said: "An escrow agreement may be parol, or written, or it may be partly in parol and partly in writing. The parties may select as depositary a person who has been, or still is, the attorney of one of them." In consonance with the above authorities, I hold that the escrow in the present instance was not precluded or destroyed by the fact that Mr. Monheit, the defendant's attorney, became the depositary.
Strictly speaking, the depositary of an escrow "is not an *Page 31 
agent at all, but rather the trustee of an express trust with duties to perform for each of the parties, which duties neither can forbid without the consent of the other." 19 Am. Jur.,Escrow, § 13. So, "where a person assumes to and does act as the depositary in escrow, he is absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed." Ibid., § 17. Thus, when Mr. Monheit's offer to seek permission of Miss Nedelman to alter the contract was rejected, he could only comply strictly with the conditions upon which he held the escrow instruments — he could only deliver the lease-option and the executed assignment to Merlin upon payment to him of $4,000 on or before the stipulated day.
Why was the complainant so willing to pay $5,000 to recapture the lease and option she had created? Did she look to a merger of the lease with her fee and a demand on Gem Liquor Store for an increased rent or a purchase by it for a greater consideration than that fixed in the option? Mr. Monheit seems to have suspected some such purpose when he insisted that if an assignment was to be made to the complainant, she agree to stipulate that it be subject to the interest of the subtenant. And, it may well be that the assignment was made to Merlin and placed in escrow to be delivered to him, with the thought that Miss Nedelman's obligation to her tenant and that of Merlin to his purchaser would thus be protected.
The complainant's rights in the assignment could be no greater than were the rights of Merlin, her assignor. He had bound himself by the terms of the escrow; he had specifically agreed that if he did not pay $4,000 on or before the 15th day of June, the money he had paid, $1,000, would be forfeited; he had agreed that time was to be of the essence of the agreement. The complainant refused to honor the escrow and to make settlement in accordance with the terms agreed to by Merlin; she lost her opportunity to retake the outstanding lease and option, and the defendant regained her right to exercise the option. Defendant exercised her option in time and her right to performance by the complainant of her contract to sell is clear and certain. Specific performance by the complainant will be decreed, with costs. *Page 32